## BENDER BODY CO. v. QUAKER CITY MOTOR COACH LINES, Inc.

### No. 123.

District Court, D. New Jersey.

June 27, 1935.

John B. Baratta, of Atlantic City, N. J., for Genevieve Hernig.

S. Rusling Leap, of Camden, N. J., for receivers.

Green & Green, of Newark, N. J., for cross-petitioner Excess Ins. Co. of America.

AVIS, District Judge.

In the above action, instituted January 18, 1932, Robert K. Bell and Osward M. Crotty were appointed receivers for the defendant, Quaker City Motor Coach Lines, Inc. (hereinafter called company). The receivers qualified and took upon themselves the administration of the affairs and assets of the company. Subsequent to their appointment, one Genevieve Hernig filed her petition setting forth that on March 5, 1931, she had recovered a judgment against the company in the sum of $37,500; that Indemnity Insurance Company for and in behalf of the company had paid the sum of $10,000 on account of said judgment, and also $115 interest and costs. The petition further alleged that subsequent to such payment the company, upon representation that it carried no further insurance, made an agreement with her to pay $10,000 additional, in installments, in settlement of said judgment; that subsequent thereto the said Hernig, as alleged in the petition, ascertained that the company carried a policy with Excess Insurance Company of America, which policy insured the company in any sum in excess of $10,000; that the receivers had obtained $1,200 in settlement of a suit brought by them against said Excess Insurance Company; that the said agreement above referred to was made upon false representations, and the petition prayed leave to join the receivers in a suit

in the Court of Chancery of New Jersey to set aside the agreement, and also to set aside the release executed by the receivers upon payment of the said $1,200. This court granted leave to Genevieve Hernig to make said receivers defendant in said chancery suit, and directed the receivers to retain the $1,200 so collected to await the outcome of that suit. The action was prosecuted in the Court of Chancery and a decree entered therein (Hernig v. Harris, 117 N.J.Eq. 146, 175 A. 169, 173) setting aside the agreement made with the company and the release executed to it by said Genevieve Hernig, and permitting her to take such action against Excess Insurance Company as she might be advised, but no decree was entered therein affecting the receivers, except as to costs.

It appears that, prior to the appointment of receivers, the company paid, on account of the agreement so entered into with Genevieve Hernig, the sum of $9,100, and prior to her application to this court to institute suit in the Court of Chancery, the receivers had sued the Excess Insurance Company to recover the $9,100 paid by the company to said Genevieve Hernig. As a result of this action, the Excess Insurance Company paid to the receivers the sum of $1,200 as a compromise settlement, which was accepted by the receivers in satisfaction of their claims under the indemnity provisions of the Excess policy aforesaid.

[1] Genevieve Hernig now files her petition requesting an order to direct the receivers to pay unto her the said sum of $1,200, obtained under and in pursuance of the terms of the agreement of release executed and delivered by the said receivers unto Excess Insurance Company, or to restore unto the said Excess Insurance Company the said $1,200, so obtained, according as said petitioner may elect. Upon the filing of said petition, an order to show cause was issued against the receivers and Excess Insurance Company. The latter company answered the petition and filed a counterclaim requesting that an order be made directing that the receivers repay the said sum of money to it. Counsel for all of the parties appeared upon the return of the rule and have filed briefs, each asserting a right to the fund.

It is apparent that Genevieve Hernig has a claim against the receivers for the full amount of her judgment, less the sums that have been paid on account thereof. If she has any claim against Excess Insurance Company, which is enforceable, she has a right to bring suit against it in such manner as she may be advised. The action commenced by the receivers was based upon a claim for reimbursement for moneys theretofore paid by company to her, on account of the judgment, which was greatly in excess of the amount received from Excess Insurance Company.

Counsel for petitioner argues that the sum of $1,200 so paid over to the receivers is a trust fund belonging to petitioner. The decree of the Chancellor, after adjudging that the agreement of May 4, 1931, and the release given in pursuance thereof be set aside, provided that "complainant may take such action looking toward a recovery under the insurance policy of the Excess Insurance Company of America as she may be advised, in order that this asset * * * inure to the benefit of the complainant," Genevieve Hernig.

The form of release executed by the receivers to Excess Insurance Company has not been produced, but I assume that the effect of any release so given could only bind the receivers or the company which they represented. If Genevieve Hernig has a valid claim against the insurance company, the release given by the receivers could not affect or extinguish that claim. I am convinced that the $1,200 so obtained by the receivers is not burdened with a trust in favor of Genevieve Hernig, but is the property of the receivers, in accordance with the indemnity provisions of the policy, as part payment of the $9,100 heretofore paid by company.

The result is that the order to show cause will be discharged, and the petition of Genevieve Hernig will be dismissed.

As to the counterclaim of Excess Insurance Company, it appears that after suit brought against it by receivers, it voluntarily made the payment of $1,200, in settlement of the claim of receivers that $10,000 or $9,100 was due and owing under the indemnity provisions of the policy, because of payments theretofore made to Genevieve Hernig on account of her judgment. It is in the nature of a reimbursement to creditors on a valid claim. If the case had gone to trial, the receivers might, and might not, have obtained a verdict for the full amount claimed. The compromise settlement is complete, and the Excess In-

surance Company is not entitled to repayment.

The counterclaim will be dismissed.

## On Rehearing.

This matter came before the court on petition of Genevieve Hernig for an order directing the receivers to pay to her the sum of $1,200 collected from Excess Insurance Company on a policy issued to defendant, to indemnify the defendant against loss by reason of being required to pay to any one injured by its negligence any sum of money in excess of $10,000. Genevieve Hernig recovered against defendant, prior to receivership, a judgment in the sum of $37,500, and was paid $10,000 interest and costs by Indemnity Insurance Company, on a policy issued by it to defendant. Pending a hearing on a rule to show cause in the state court as to why the verdict should not be set aside, a settlement was effected between the defendant and Genevieve Hernig by which she ultimately received the payment of the aforesaid amount from Indemnity Insurance Company and the additional sum of $10,000 from the defendant. At the time of settlement the defendant, believing that no recovery could be had on the policy of Excess Insurance Company, failed to make disclosure of the fact that such a policy was in existence. The receivers, subsequent to their appointment, instituted suit against Excess Insurance Company on the policy, claiming a right to reimbursement for the amount of $10,000 paid to Genevieve Hernig, and ultimately effected a compromise settlement with this company in the amount of $1,200. This is the sum which Genevieve Hernig claims she is entitled to have paid to her.

Subsequently, Genevieve Hernig filed her bill of complaint in the Court of Chancery of New Jersey, making the receivers in this cause defendants with the leave of this court, and obtained a decree setting aside the agreement of settlement herein referred to, whereby the defendant was released from liability upon the payment of the additional sum of $10,000. This decree was based upon the fraud of defendant in not disclosing the fact that it had the policy of insurance of Excess Insurance Company.

The facts found and the conclusions of this court are more fully set out in a memorandum decision filed June 27, 1935. After the filing of this memorandum, counsel for Genevieve Hernig made a motion for reargument which was allowed, and argument has been had and briefs submitted.

The main reason advanced for reopening the case was because the court in the memorandum stated as a fact that the "policy insured the company in any sum in excess of $10,000." Counsel for petitioner contends that the limit of insurance under the Excess policy was $10,000, and not unlimited as stated in the memorandum. This appears to be a fact, but, in my opinion, does not affect the result stated in the aforesaid memorandum.

This is essentially an equity case, and all of the principles of equity must necessarily apply. It is the duty of an equity court to see that its orders and decrees are in accordance with equity and good conscience.

The petitioner has received from defendant, in excess of the amount paid by Indemnity Insurance Company, the sum of $10,000, the full amount she would have received if the policy of Excess Insurance Company had been disclosed, a suit had been instituted thereon, and judgment rendered for the maximum amount of liability.

It is apparent that the defendant was insolvent at the time settlement was made with petitioner. The amount of $10,000 was apparently paid to her in installments out of the earnings of the company to the detriment of creditors.

In the opinion of the Vice Chancellor, submitted by the attorney for petitioner and annexed to his brief, the following paragraph appears:

"Mr. Harris desiring the good will of the motor coach company, consisting of busses, franchises, name, etc., he and his attorney induced the settlement by truthful representation that the company itself was insolvent, and by his willingness to secure, by his own indorsement, coupled with that of his wife, and a chattel mortgage, a further sum of $10,000."

It is apparent that petitioner received the full sum of the indemnity provided by the Excess policy; that such payment was made by a then insolvent corporation. The creditors are entitled to the benefit of the payment of the $1,200 as part reimbursement of the moneys paid to petitioner.

The court adheres to the conclusions stated in memorandum filed June 27, 1935.